Ring *v*. State.

## Opinion delivered June 19, 1922.

1. INDICTMENT AND INFORMATION—FOLLOWING LANGUAGE OF STATUTE.—Indictment for keeping in possession a still without having registered the same with the proper United States officer *held* to charge the offense in substantially the language of the statute.

2. INTOXICATING LIQUORS — SUFFICIENCY OF EVIDENCE. — Evidence *held* sufficient to sustain a conviction of keeping in possession a still contrary to Acts 1921, p. 372.

3. INTOXICATING LIQUORS—KEEPING STILL IN POSSESSION.—Testimony tending to prove that defendant consented to a still being operated on his place and helped to put it up there, and furnished the fuel for its operation, and that he was receiving part of the product, constitutes keeping a still in his possession within the prohibition of Acts 1921, p. 372.

4. CRIMINAL LAW—ADMISSION OF EVIDENCE HARMLESS WHEN.—Since defendant, on a charge of having in his possession an unregistered still, has the burden of shownig that the still was registered, any error in the admission of proof by the State to show that it was not registered was harmless.

5. INTOXICATING LIQUORS—BURDEN OF PROOF.—One charged with keeping a still not registered with the proper United States officer contrary to Acts 1921, p. 372, has the burden of proof on the issue of registration.

6. INTOXICATING LIQUORS—POSSESSION OF STILL.—Under Acts 1921, p. 372, providing that no person shall keep in his possession any still without registering it with the proper United States officer, the act of taking or holding possession must be voluntary, but the possession need not be permanent.

7. CRIMINAL LAW—INSTRUCTIONS.—While ordinarily either party is entitled to an instruction stating the converse of a given proposition, yet where in one instruction the court declared what acts

were essential to constitute the offense under the statute, another requested instruction that certain other conditions would not constitute a violation thereof need not be given.

Appeal from Conway Circuit Court; *A. B. Priddy,* Judge; affirmed.

*W. P. Strait,* for appellee.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCulloch, C. J. Appellant was indicted and convicted under the statute which reads as follows:

"No person shall keep in his possession any still-worm or still without registering the same with the proper United States officer, and no person shall set up to be used as a distillery any still-worm or substitute therefor and a still or substitute therefor, such as a kettle, washpot, metal tank, or any other vessel of any kind for the purpose of using same, or which, after being so set up, may be used for the production of distilled spirits." Acts of 1921, p. 372.

The language of the charging part of the indictment is that the accused "did wilfully, unlawfully and feloniously keep and possess a certain stillworm and still to be used for the production of ardent, vinous, malt, spirituous and fermented liquors and alcoholic and distilled spirits; the said Nick Ring not having registered the same stillworm and still with the proper United States officers," etc.

There was a demurrer to the indictment, which the court overruled, and there is an assignment of error with respect to that ruling, but no argument is made here in support of the contention, and we are unable to discover any reason for holding that the indictment failed to charge an offense under the statute. The indictment may not be in the precise language of the statute, but it was sufficient to charge the acts constituting the offense substantially in the language of the statute.

It is contended that the evidence is insufficient to sustain the verdict of the jury, and that, according to the

undisputed evidence, appellant was not guilty of the offense with which he is charged.

The State introduced as a witness one Neal, who was confessedly an accomplice of appellant, if the latter was guilty of the offense at all. Neal testified that he had been operating the still for about a month at or near a place called Sandtown, and that he frequently talked with appellant about operating the still; that the latter knew about it and was getting some of the product of the still. He testified that he found it necessary to move the still, and obtained permission of appellant to use the latter's wagon and team in hauling it; that he got appellant's wagon and team in the latter's absence and went down and got the still and hauled it up to appellant's house at night and put it in the barn-yard, the still being covered with hay in the bed of the wagon; that next morning he and appellant drove the wagon down to a thicket on appellant's place, unloaded it, and that it was set up and put into operation at that place. He testified that appellant helped put up the still and furnished the fuel for its operation.

Another witness, Gordon by name, testified that he lived near appellant's farm, and that Neal, in appellant's presence, pushed aside the covering of hay and showed him the still.

The two officers who arrested appellant testified that they found the still in full operation in a thicket on appellant's farm, a short distance from the end of the rows where appellant was plowing. They testified that they could smell fumes from the still, and that when the wind was right a person could see the smoke and smell the fumes from the still at the place where appellant was plowing.

Appellant denied that he lent the team to Neal, and said that he refused to have anything to do with the still, and that Neal took his (appellant's) team during his absence and hauled the still at night. He testified that he refused to have anything to do with the same, and he ex-

plained the fact of the still being hauled away next morning by saying that he was going down to the field to work and he merely consented for Neal to drive the team down there so as to get away from the house, and to get his team down there in the field where he could use them at work. He denied that he consented for the still to be erected or operated on his place, and said he did not know it was there until he was arrested.

The evidence was, we think, sufficient to sustain the conviction. It is true that the testimony came principally from Neal, who was an accomplice, but there is abundant corroboration in the fact that the still was being operated on appellant's farm, at a place where he was bound to have known that it was being operated.

It is undisputed that the still was carried to appellant's place and kept over night in his barn-yard, and then taken to the thicket where it was set up and put into operation. It is also undisputed that he saw the still in the wagon, and that he consented for it to be hauled to the thicket in his wagon. The only question, therefore, is whether or not his connection with the transaction was voluntary, or whether it was forced upon him, as he claims, by the conduct of Neal.

There is evidence tending to show that appellant consented for Neal to use his team to haul the still from Sandtown, and that he drove the wagon in which the still was hauled next morning from his barn-yard down to the thicket. There are also circumstances in the case which warrant the conclusion that appellant knew of the presence of the still and that he was interested in operating it there on his farm. This constituted keeping a still in his possession within the meaning of the statute.

Appellant also has an assignment of error with reference to the method of proof of the fact that the still was not registered, but since the burden was on appellant himself to make an affirmative showing that the still was registered, and no such proof was made, it was unim-

portant whether the State introduced the right kind of certificate or not. *Moore* v. *State, ante* p. 13.

Appellant assigns as error the refusal of the court to give an instruction telling the jury that it devolved upon the State to prove beyond a reasonable doubt that the still was not registered. This instruction was properly refused, for, as before stated, the burden was not on the State, but it was on appellant, to prove that the still was registered.

Appellant requested the court to give an instruction telling the jury that "temporary possession of the still in question or hauling for another the still in question from one place to another" did not constitute the keeping of a still within the meaning of the statute. The instruction was incorrect, and the court properly refused it, because the statute does not limit the offense to permanent possession. The act of taking or holding possession must be voluntary, but it will not be permanent. To hold otherwise would be to read something into the statute which is not found in the language of the lawmakers. The court gave an interpretation of the meaning of the statute in the following instruction, which, we think, is correct:

"You are instructed that the defendant in this case is indicted for keeping in his possession the still in question, without having same registered as required by law. The language 'keep in his possession,' as used in the statute, means the possession, control and management, either alone or jointly with Neal, by defendant, of the still, and the exercise in some way of control or dominion thereof."

This instruction is a literal copy of instruction No. 9, requested by appellant, except that appellant's instruction contained the statement that the possession must be permanent.

Appellant requested the following instruction, and the refusal to give it is assigned as error:

"If you find or believe that the still in question belonged to Vestal Neal, and that he had the exclusive control and possession and disposition thereof, to the exclusion of the defendant, Ring, then the defendant would not be guilty of keeping in his control or possession the still within the meaning of the law."

This instruction is correct, but we think the substance of it was sufficiently covered in instruction No. 8, quoted above, and which the court gave. Ordinarily, either party is entitled to an instruction stating the converse of a given proposition, but instruction No. 8 in effect states both sides of the question by correctly defining what the language of the charge means. It is not an instance where the court stated facts which would constitute guilt of the charge and then refused to give the converse, but it is an instance where the court in one instruction correctly declared what acts were essential to constitute the offense under the statute.

There are other refused instructions, which we deem it unnecessary to discuss, for we are of the opinion that the court's charge covered every phase of the case, and the court was not bound to give the requested instructions which singled out facts and submitted them separately to the jury.

We find no error in the record, and the judgment is affirmed.